**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**LATARRIS KEITH ROBINSON
ADC #108971**                                                                                           **PLAINTIFF**

**V.**                     **CASE NO. 5:12CV00109 JLH/BD**

**CORDERRO R. DAVIS, et al.**                                          **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**       **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail objections and "statement of necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.    Background:

In his Complaint and Amended Complaint, Mr. Robinson claims that his constitutional rights were violated after a disturbance at the Varner Unit of the Arkansas Department of Correction ("ADC") in February of 2011. (Docket entries #2, #58) He alleges that immediately following the disturbance, Sergeant Davis, along with other unnamed ADC officials, used excessive force against him that caused lacerations to his face. Mr. Robinson also alleges that Sergeant Davis, Nurse Ables, Nurse Newton, Captain Stevens, and Warden Jimmy Banks failed to provide him with medical treatment for the injuries that he sustained during the incident.

In addition, he claims that Major Byers and Warden Meinzer later retaliated against him for filing grievances regarding the incident. Mr. Robinson also complains that Warden Banks failed to protect him from an assault by other ADC officers and ordered staff members to remove Mr. Robinson's clothes in order to humiliate him. Finally, Mr. Robinson alleges that he continues to experience migraines, night sweats, and trauma as a result of the incident, but that Dr. Rector, Dr. Bowman, Dr. Hubbard, and Wendy Kelly have failed to address his mental health needs. Mr. Robinson seeks monetary and injunctive relief.

The Court previously dismissed Mr. Robinson's claims against Defendants Davis, Bowman, May, as well as the John Doe Defendant. (#54, #128)

Defendants Ables, Newton, and Hubbard ("Medical Defendants") have now moved for summary judgment on Mr. Robinson's claims against them. (#160) Defendants Banks, Byers, Stephens, Meinzer, Rector, and Kelly ("ADC Defendants") also have moved separately for summary judgment. (#163) Mr. Robinson has responded to the motions. (#177, #178, #179, #180, #181, #182)

Based on the evidence presented, the Court recommends that the motions for summary judgment (#160, #163) be GRANTED. Mr. Robinson's claims against Defendant Hubbard and Defendant Banks should be DISMISSED, without prejudice, based on his failure to exhaust administrative remedies. Mr. Robinson's claims against Defendants Ables, Newton, Byers, Stephens, Meinzer, Rector, and Kelly should be DISMISSED, with prejudice. In addition, Mr. Robinson's claims for money damages against Defendant Banks in his official capacity should be DISMISSED, with prejudice.

III. <u>Discussion</u>:

A. Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). Once the

moving party has successfully carried its burden under Rule 56(c), the nonmoving party must go beyond the pleading and, by deposition, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005)(internal citation omitted) ("The nonmoving party may not rest on mere allegation or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.") If the opposing party fails to show that there are specific, important facts in dispute, summary judgment should be granted. See *Celotex*, 477 U.S. at 322.

    B.    Medical Defendants' Motion

    1.    Exhaustion

Prisoners must exhaust all "available" institutional remedies before filing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). If exhaustion is not complete by the time a lawsuit is filed, the Court must dismiss all unexhausted claims. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

Whether a claim has been properly exhausted turns on the specifics of the prison policy. *Jones v. Bock*, 549 U.S. 199, 923 (2007). Prisoners can be excused from

exhausting administrative remedies, but only when correction officials have prevented them from using grievance procedures or when the officials themselves have not complied with the administrative procedures. *Miller v. Norris*, *supra* at 740; *Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir. 2001).

In support of their motion, the Medical Defendants offer the affidavit of Sherrie Williams, the ADC Medical Grievance Investigator. (#160-2) Ms. Williams testifies that although Mr. Robinson filed eight medical grievances between February 25, 2011 and March 24, 2012, he fully exhausted only two grievances, VU 11-00507 and VSM 11-04337. (#160-2 at p.1)

In grievance VU 11-00507, Mr. Robinson complained that he was not provided mental health treatment for headaches and nightmares he has suffered since the disturbance with ADC staff members. (160-3 at p.3) In grievance VSM-11-04337, Mr. Robinson also complained about the lack of mental health treatment. (#160-3 at p.15) He specifically mentioned Defendant Rector in grievance VSM 11-04337, stating that the "psychiatrist" who examined him was "no help." (#160-3 at p.15)

The Medical Defendants contend that the undisputed medical evidence shows that Mr. Robinson's claims against Defendants Ables, Newton, and Hubbard were not fully exhausted. In his response to the Medical Defendants' motion and in his deposition testimony, Mr. Robinson argues that he identified Defendants Ables and Newton by title in grievance VU 11-0240. (#180 at p.6; #164-1 at p.118) Mr. Robinson provides a copy

of that grievance as well as his appeal to the warden and the deputy director. (#180 at pp.7-11) In the grievance, Mr. Robinson complained about the treatment that he received by "two nurses." (#180 at p.6) Based on these documents, and viewing this evidence in the light most favorable to Mr. Robinson, it appears that Mr. Robinson fully exhausted his claims against Defendant Ables and Newton. Accordingly, these Defendants are not entitled to judgment as a matter of law on this basis.

Mr. Robinson, however, has not come forward with any evidence showing that he either fully exhausted his administrative remedies against Defendant Hubbard or that he was prevented from exhausting his administrative remedies against Defendant Hubbard. In his deposition, Mr. Robinson explained that he filed a grievance against Defendant Hubbard, but that he did not think that he fully appealed that grievance. (#164-1 at pp.121-122) Accordingly, Defendant Hubbard is entitled to judgment as a matter of law on Mr. Robinson's claims against her.

  2.  Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs constitutes the kind of "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To show the prison officials failed to provide adequate medical treatment, however, Mr. Robinson would have to show that he suffered from an objectively serious medical need, and that the named Defendants knew of his need but

deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

A prisoner who alleges that a delay in treatment caused his harm must present verifying medical evidence that the prison officials "ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." See *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogated on other grounds by *Johnson v. Jones*, 515 U.S. 304 (1995), as recognized in *Reece*, 60 F.3d at 492 (internal quotation marks omitted)).

Here, Mr. Robinson claims that Defendants Ables and Newton failed to provide him proper medical treatment following the altercation that took place at the Varner Unit. He claims that although he sustained a laceration to his face as well as black eyes, his medical needs were ignored.

In support of their motion for summary judgment, the Medical Defendants provide Mr. Robinson's medical records. This undisputed evidence shows that Mr. Robinson sustained a minor laceration (measuring approximately 0.5 centimeters in size) between his eyebrows when ADC staff members allegedly pushed Mr. Robinson into the bars of the barbershop window. (#160-4 at p.1)

According to Mr. Robinson's medical records, as well as his deposition testimony, he encountered Defendant Ables in the early morning on February 26, 2011. (#160-5 at p.5) During that encounter, Mr. Robinson requested that Defendants Ables provide him medical treatment and take photographs of his injuries. (#160-5 at p.9) At that time, Defendant Ables noted that there was no acute distress. (#160-4 at p.3) She also indicated that her visual assessment was "minimal" due to the ongoing rioting. (#160-4 at p.3) It is unclear whether Mr. Robinson's head wound was actively bleeding at that time. (#160-5 at p.15)

Mr. Robinson saw Defendant Newton later on the morning of February 26, 2011, during "pill call" while he was in isolation. (#160-5 at p.11) Mr. Robinson sought immediate treatment for the laceration that he sustained to his head, but Defendant Newton did not have the necessary supplies with her. (#160-5 at pp.11-16) She advised Mr. Robinson to come to the infirmary when he was released from isolation. (#160-5 at p.16)

Mr. Robinson was released from isolation at 1:58 p.m. on February 26, 2011, and within thirty minutes Defendant Newton applied Steri-strips to close Mr. Robinson's head wound. (#160-4 at p.1) Mr. Robinson complains that because Defendant Newton used Steri-Strips rather than stitches to close his injury, he now has a permanent scar on his forehead. (#160-5 at pp.19-20; #176 at p.6)

Based on this undisputed evidence, the Court concludes that Medical Defendants Ables and Newton are entitled to judgment as a matter of law on Mr. Robinson's claims against them.

First, the Court is hesitant to conclude that the minor laceration that Mr. Robinson suffered constitutes a "serious injury." Assuming that the injury was a "serious medical need," under the circumstances, he cannot show deliberate indifference. "[T]he level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness." *Holden v. Hirner*, 663 F.3d 326, 340 (8th Cir. 2011) (citing *Jenkins v. Cnty. of Hennepin*, 557 F.3d 628, 632 (8th Cir. 2009)). Although Mr. Robinson did not receive immediate medical treatment, Defendant Ables promptly examined him and noted no significant injury. Due to the ongoing disturbance, Defendant Ables was not able to perform a more thorough evaluation or provide any further treatment. However, within several hours, Defendant Newton closed Mr. Robinson's laceration using Steri-strips. Mr. Robinson complains that stitches would have been a better course of treatment than application of Steri-strips, but "inmates have no constitutional right to receive a particular or requested course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Further, the Medical Defendants have provided sworn statements from Gregory S. McKinney, M.D. (#160-6) Dr. McKinney testified that due to the small size of Mr. Robinson's laceration, Steri-strips, rather than traditional sutures, "were particularly

9

appropriate," and that Mr. Robinson received "appropriate and satisfactory" medical care and treatment. (#106-6 at pp.1-2) Other than his own declaration, Mr. Robinson has no evidence to contradict Dr. McKinney's expert testimony.

Based on the undisputed evidence, this Court concludes that Mr. Robinson has failed to create a material dispute of fact as to the culpability of Defendants Ables and Newton. Even though Mr. Robinson did not receive immediate care, he undisputedly received prompt, appropriate medical treatment. He has failed to come forward with any evidence from which the Court could conclude that either Defendant Ables or Newton maliciously denied him medical treatment; nor has he presented any evidence that he suffered any additional injury as a result of a delay in treatment. Accordingly, Defendants Ables and Newton are entitled to summary judgment.

  C.  ADC Defendants' Motion

  1.  Sovereign Immunity

Mr. Robinson's claims for money damages from the ADC Defendants in their official capacities are barred by sovereign immunity. A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). For that reason, Mr. Robinson's official-capacity claims seeking money damages should be summarily dismissed.

2.	Exhaustion - Defendant Banks

Mr. Robinson claims that Defendant Banks ordered ADC officials to remove his clothing in front of other ADC inmates and staff members in order to humiliate him. (#164-1 at p.77)  He also complains that Defendant Banks ordered ADC officials to withhold medical treatment to inmates in need and that he refused to provide the name of the ADC official who assisted Corderro Davis in allegedly running Mr. Robinson head-first into the barbershop window.  (#164-1 at p.77)  Finally, Mr. Robinson claims that Defendant Banks failed to protect him from assault by the other ADC officers.

ADC Defendants contend that Mr. Robinson failed to exhaust his administrative remedies against Defendant Banks as required by statute.  In support of their motion, they include the affidavit of Barbara Williams, the Agency Inmate Grievance Supervisor. (#164-2)  Ms. Williams testifies that Mr. Robinson failed to name Defendant Banks in any fully exhausted grievance.  Further, in his deposition testimony, Mr. Robinson admits that he did not file a grievance naming Defendant Banks.  (#164-1 at p.96)

In response to the motion for summary judgment, Mr. Robinson claims that he did not discover that Defendant Banks was involved in the events giving rise to this lawsuit until he was allowed to view the videotape of the incident after this lawsuit was filed, and after the time period for filing a grievance had passed.

Unfortunately for Mr. Robinson, an inmate's subjective beliefs are irrelevant in determining whether an administrative procedure was available.  *Chelette v. Harris*, 229

F.3d 684, 688 (8th Cir. 2000).  Further, in his original Complaint, Mr. Robinson plainly stated that Defendant Banks failed to protect him from the alleged assault on February 26, 2011.  (#2 at p.26)

Because Mr. Robinson has failed to come forward with any evidence showing that he fully exhausted his claims against Defendant Banks, or that he was prevented from doing so, those claims should be DISMISSED, without prejudice.

3.   Defendant Stevens

Mr. Robinson claims that Defendant Stevens failed to provide him immediate medical treatment following the altercation that took place on February 26, 2011.  Mr. Robinson alleges that he told Defendant Stevens about his injuries and his need for medical treatment, but that Defendant Stevens "didn't act like he was paying attention to what I was saying" and did not respond.  (#164-1 at p.69)

Again, it is undisputed that Mr. Robinson received medical treatment within hours of the underlying incident.  He has failed to come forward with any evidence showing that he sustained any additional injury as a result of a delay in treatment.  Further, he has not come forward with any evidence to show that Defendant Stevens acted maliciously in denying or delaying treatment.  Accordingly, Defendant Stevens is entitled to judgment as a matter of law on Mr. Robinson's deliberate-indifference claim.

12

    4.    Retaliation Claim

Mr. Robinson complains that Defendants Byers and Meinzer disciplined him in retaliation for filing a grievance regarding the incident that took place on February 26, 2011.[1]

In his deposition testimony, Mr. Robinson explains that on March 26, 2011, Officer Tillis wrote him a major disciplinary for indecent exposure. (#164-1 at pp.79-80) Two days later, Defendant Byers "locked [him] up." (#164-1 at p.83) On March 30, 2011, Defendant Meinzer saw him during an administrative segregation review. Mr. Robinson claims that Defendant Meinzer "wasn't try to hear nothing that I was saying" and that he "set me off to the next week for possible assignment." (#164-1 at p.81) At the next review, Mr. Robinson claims that he was assigned to administrative segregation for masturbating, an offense for which he was never charged. (#164-1 at p.82)

Further, in his response to the ADC's motion for summary judgment, Mr. Robinson claims that, although Defendant Byers "signed off" on over fifty disciplinaries on March 28, 2011, Mr. Robinson was the only one that Defendant Byers "locked up" because he had filed a grievance concerning the incident that occurred on February 26, 2011. (#187 at p.7)

---

[1] Mr. Robinson includes in his statement of undisputed facts "whether the denial of plaintiff's mental health need were done behind Ms. Rector knowing plaintiff intended to file lawsuit on prison staff." (#179 at p.4) Because Mr. Robinson includes this claim for the first time in response to the Defendants' motion for summary judgment, this claim will not be addressed in this Recommendation.

The ADC Defendants attach to their summary judgment motion Mr. Robinson's disciplinary papers regarding the March 26th incident. (#164-7 at pp.1-7) According to these documents, on March 28, 2011, a disciplinary hearing was held, and Hearing Officer Lori Taylor (not a defendant to this lawsuit) found Mr. Robinson guilty of the disciplinary at issue based on the staff report. (#164-7 at pp.2-3) It is well settled that a retaliation claim is precluded if punishment was imposed based on an actual violation of prison rules and that the defendants had "some evidence" that the inmate actually committed the alleged rule violation. *Earnest v. Courtney*, 64 F.3d 365, 367 (8th Cir.1995) (per curiam). "Under this standard, a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *Santiago v. Blair*, 707 F.3d 984, 993 (8th Cir. 2013).

Here, it is undisputed that Officer Tillis filed a report detailing Mr. Robinson's alleged conduct. Mr. Robinson was then brought before a disciplinary action board for a hearing at which Lori Taylor, an impartial decision maker, found him guilty. Ms. Taylor sentenced Mr. Robinson to thirty days in punitive isolation and a classification level reduction. (#164-7 at p.2) Accordingly, Mr. Robinson's claim of retaliatory discipline fails as a matter of law.

5. Deliberate Indifference Claim - Mental Health Treatment

Mr. Robinson claims that after he was referred to Defendant Rector, he had two counseling sessions with her. (#164-1 at p.87) He claims that Defendant Rector provided him pamphlets and suggested exercises that might assist him, but that she failed to provide him any actual mental health treatment. He alleges that he continues to suffer from migraines, night sweats, and nightmares. Mr. Robinson, however, admits that Defendant Rector came to his cell several times to bring him a pamphlet or discuss various exercises. (#164-1 at pp.88-90) Mr. Robinson's complaint that Defendant Rector did not provide him with a diagnosis fails to state a claim for federal relief. (#164-1 at p.90)

Mr. Robinson claims that Defendant Kelly acted with deliberate indifference to his medical needs because she denied the grievance in which he requested to be examined by a psychiatrist. (#164-1 at p.93) In her response to Mr. Robinson's grievance, Defendant Kelly explains that the unit "psychologist determined that there was no clinical indication that mental health services were warranted or indicated." (#160-2 at p.1)

Despite Defendant Rector's finding that there was no "clear indication" that Mr. Robinson suffered from a mental health problem, he was referred to a psychiatrist and was evaluated by Dr. Bowman on November 1, 2011. She determined that there was "no medical indication for medications" and that Mr. Robinson should "work with [mental health] for counseling and to acquire coping skills." (#160-4 at p.14)

15

Regarding Mr. Robinson's complaints of a head injury, his medical records reveal that on November 17, 2011, he received prescription medication to treat his headaches. (#160-4 at p.16)  Further, on January 2, 2012, Mr. Robinson was referred to the unit provider due to his headache complaints.  (#160-4 at p.17)  On January 26, 2012, Mr. Robinson was evaluated by Dr. Iko.  She found that there was "no objective clinical evidence [] suggestive of intracranial lesion that will require radiological evaluation" and that Mr. Robinson's "headache description does not fit migraine headaches presentation." (#160-4 at p.l81)

Again, in April 2012, Mr. Robinson was referred to a physician due to his headaches and an x-ray examination was promptly scheduled.  (#160-4 at pp.20-22)

Based on this undisputed evidence, the Court cannot conclude that either Defendant Rector or Kelly acted with deliberate indifference to Mr. Robinson's medical, including mental health, needs.  Mr. Robinson's medical records show that his medical and mental health needs were consistently been monitored.  Mr. Robinson may disagree with the treatment provided, but he has failed to create a genuine issue of material fact with regard to either Defendant Rector's or Defendant Kelly's conduct.  Accordingly, these Defendants also are entitled to judgment as a matter of law.

**IV.  Conclusion:**

The Court recommends that the motions for summary judgment (#160, #163) be GRANTED.  Mr. Robinson's claims against Defendant Hubbard and Banks should be

DISMISSED, without prejudice.  Mr. Robinson's claims against Defendants Ables, Newton, Byers, Stephens, Meinzer, Rector and Kelly should be DISMISSED, with prejudice.[2]  In addition, Mr. Robinson's claims for money damages against Defendant Banks in his official capacity should be DISMISSED, with prejudice.

DATED this 28th day of May, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2]  In their summary judgment motion, the ADC Defendants also argue that they are entitled to qualified immunity.  Because the Court has determined that Mr. Robinson's constitutional claims fail as a matter of law, the ADC Defendants' qualified immunity argument need not be addressed.